J. Evan Shapiro (SBN 218481)
eshapiro@taulersmith.com
Camrie Ventry (SBN 355853)
cventry@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 1100
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff Carol Price*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL PRICE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>DIVURGENT, LLC, a Virginia limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **VIOLATIONS OF THE CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)** |

**INTRODUCTION**

1.      Defendant Divurgent, LLC ("Defendant" or "Divurgent") uses data broker software on its website – http://divurgent.com/ (the "Website") – to secretly collect data about a Website visitor's computer, location, and browsing habits.  The data broker software then causes the data to be matched with extensive external records it already has about most Californians.  This enables visitor identification, the creation or enhancement of visitor profiles, the ongoing tracking of visitors and the sale of the data and profiles. In addition, Divurgent and its Website utilize code owned by the social media platform-operating company LinkedIn Corporation ("LinkedIn") that operates similarly for overlapping purposes (LinkedIn may not sell data or profiles).   Both Defendant and the third-party data collectors benefit commercially and financially from this surveillance.

2.      Defendant's installation and use of data broker software, and LinkedIn code, without obtaining consent and in an unauthorized manner, violates California Penal Code § 638.51, California's Trap and Trace Law.  Section 638.51 prohibits the use or installation of devices or processes that are "reasonably likely" to identify the source of an electronic communication.  Here the electronic communication is the exchange of signals and data between Plaintiff and her device, on the one hand, and Divurgent's Website, on the other.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class.  Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

4.      Defendant Divurgent is a Virginia limited liability company that offers healthcare information technology ("IT") consulting services and solutions to

CLASS ACTION COMPLAINT

1

businesses. These include talent recruitment, temporary staffing and contract staffing. Since 2022, Defendant has had at least one California-based senior recruiter, Richa Singh.[1] This makes sense given that California, an established center for digital technology and artificial intelligence, is a major hub for healthcare-related IT.

5. Defendant actively markets its products to California businesses and proprietors. It maintains ongoing business relationships with such California customers. Defendant derives substantial revenue from California-based transactions through operation of the Website. Defendant deliberately avails itself of California's commercial privileges by operating its interactive Website infrastructure, which Defendant specifically designed to engage California customers.

6. Further, Defendant specifically intended its surveillance operations to cause injury to California residents. Defendant configured its tracking systems on its Website to identify, profile, and exploit California users.

7. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; (2) does substantial business within this District; and (3) is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District.

## PARTIES

8. Plaintiff Carol Price ("Plaintiff") is, and at all times relevant to this complaint has been, a citizen of California residing and located within the Central District of California. Plaintiff maintains reasonable expectations of privacy when

---

[1] https://www.divurgent.com/careers/recruiters/ (last visited 2/8/2026) ("Richa relocated from India to California's Bay area 20 years ago, where she now soaks up the sun along with her husband and 3 daughters.").

CLASS ACTION COMPLAINT

2

browsing websites. Defendant systematically violated these expectations through its unauthorized surveillance activities.

9. Defendant Divurgent is a Virginia limited liability company that owns, operates, and/or controls http://divurgent.com/ (the "Website"). Through the Website, Divurgent offers healthcare IT consulting and recruitment services to businesses, including businesses in California.

10. Plaintiff identifies DOE Defendants 1 through 10 as unknown entities that Defendant directed and controlled to participate in implementing or maintaining Defendant's system. Plaintiff will seek leave to amend this Complaint to identify these entities when Defendant's discovery responses reveal their true names and roles.

11. Each DOE Defendant acted as Defendant's agent or employee in Defendant's implementation of the surveillance scheme described herein. Each DOE Defendant operated within the scope of its relationship with Defendant, and participated with Defendant in the common plan to unlawfully track California residents for Defendant's commercial gain.

## FACTUAL ALLEGATIONS

12. Defendant is the proprietor of the Website.

13. The Website, like most other websites, due to code or software program running on the Website, can determine the approximate geolocation of its visitors once the visitors request to visit the Website from their devices. This ability exists separate and apart from the Data Broker software, and the LinkedIn code, running on the Website, that form the basis of Plaintiff's claim(s) in this action.

14. Defendant has partnered with registered California Data Brokers in order to deanonymize and develop clandestine user profiles on otherwise anonymous website visitors ("Data Brokers"). Defendant has done this by installing at least two Data Broker Software Development Kits ("DBSDKs") on the Website: the SDK of LiveRamp, Inc. (the "LiveRamp DBSDK") and the SDK of ZoomInfo Technologies

LLC (the "ZoomInfo DBSDK"). Defendant is also working with a social media platform that provides advertising services, LinkedIn, to engage in similar commercial surveillance. To accomplish this, Defendant installed code belonging to LinkedIn on its Website.

15. DBSDKs are designed to track and correlate visitors by capturing electronic impulses designed to identify them. This is accomplished through "browser fingerprinting," a process by which Data Brokers are able to ascertain the identity of a website visitor by plotting hundreds of personal identifiers, including a user's geolocation, device information, identification and cross-referencing of malicious cookies installed on their devices, and other traits evident from a user's browser. Individually, data points like the size of a device's screen, may seem innocuous and mundane, and too isolated to identify someone. However, when compiled with scores of other data points, and seen in the context a person's internet activity, they enable Data Brokers, and other third parties such as social media/advertising networks, to do more than simply identify someone. DBSDKs allow third parties to glean such things as a website visitor's income bracket, educational level, sexual orientation, health status and political leanings.

16. Code belonging to LinkedIn, referred to as the "LinkedIn Insight Tag" operates in a substantially similar way. It associates data it collects about visitors to the Website with identifiers it assigns to users. Identifiers are unique labels that advertising and analytics systems use to identify a device, browser or user over time. The LinkedIn Insight Tag builds and enhances profiles of website visitors, and also tracks them as they navigate to other websites on which the Tag is deployed.

### Registered California Data Brokers

17. Data Brokers are companies whose core business is to collect, aggregate, analyze, and sell or license personal and non-personal data about individuals and organizations. Data Brokers operate largely behind the scenes, often without direct interaction with the individuals whose data they monetize.

18.    Data Brokers gather information from a wide variety of sources, including by purchasing information from commercial sources like retailers, financial institutions, online marketplaces, subscription services, and loyalty programs.

19.    Once the data is collected it is consolidated and organized into comprehensive profiles that may include thousands of attributes per individual. The data is then cross-referenced and linked using unique identifiers like device IDs and cookies to unify data about individual users from multiple sources.

20.    Data Brokers are accumulating data and profiling individuals to an alarming extent. As the CEO of a Data Broker recently described the extent of their surveillance abilities as to an otherwise anonymous individual: "We know who she is, what she watches, what she reads, and who she lives with. [We] also know who she follows on social media, what she buys online and offline, where she buys, when she buys, and more importantly, why she buys. We know that [she] has two children and that her kids drink lots of premium fruit juice. We can see that the price of the SKU she buys has been steadily rising on her local retailer's shelf. We can also see that [her] income has not been keeping pace with inflation."[2]

21.    Given the amount of data available by way of the Data Brokers' practices, a company like Defendant has an incentive to partner with a Data Broker so that it can learn the identity of their website visitors and obtain data about them it would not otherwise have. This can be used to influence or manipulate visitors to obtain their business, target them with marketing and convert them into purchasers of goods or services.

22.    By installing the LiveRamp and ZoomInfo DBSDKs, Defendant has allowed the two Data Brokers to access, use, and monetize the data about visitors such as Plaintiff that Defendant has directed to them. Plaintiff, and all other visitors

---

[2] Lucas Ropek, Data Broker Brags About Having Highly Detailed Personal Information on Nearly All Internet Users, March 15 2025 (Gizmodo.com).

CLASS ACTION COMPLAINT

5

to websites with these DBSDKs, never learn what LiveRamp and ZoomInfo do with their data. This information is only shared within these companies, or with entities that purchase the visitor data from them.

**The LiveRamp and ZoomInfo DBSDKs**

23. LiveRamp, Inc. ("LiveRamp") is one of the largest data brokers in California, specializing in deanonymization of website users. The LiveRamp DBSDK tracks online signals from a website visit and matches it with their vast database to create a universal serial number for a person called a "RampID." The LiveRamp DBSDK functions as follows:

24. First, when the LiveRamp DBSDK loads on a webpage, it immediately captures a user's identifiers present in that context. These include cookie IDs generated by the website itself, and standard header info like IP and user-agent.

25. Second, the data obtained by the LiveRamp DBSDK is sent to LiveRamp's servers where LiveRamp combines the data obtained from a visit to Defendant's website with other data it has obtained about the individual both online and offline. This data includes name and postal address, email address, cookie IDs, and mobile device IDs.

26. Third, through this process, the user is matched with a "RampID," effectively a data broker serial number. LiveRamp's RampID is permanent, and designed to persistently track an individual across thousands of websites. RampIDs do not change with clearing cookies or switching devices. The RampID, and the data associated with it, is widely shared with dozens of partners in the advertising tech space, so that all parties who pay for the data can identify the user and discern the user's online behavior.

27. Identification of website visitors through the LiveRamp DBSDK happens in "real-time," allowing the websites of LiveRamp's customers to "access people-based data immediately at the time of impression." It also works across devices. In other words, the LiveRamp DBSDK can inform websites that deploy

CLASS ACTION COMPLAINT

6

this DBSDK that the same account or person has accessed the website from different devices. As LiveRamp explains, "[w]ith impressions matched to a persistent people-based ID, data are stitched across devices and not lost over time with new cookies or phones."

28. The ZoomInfo DBSDK is designed to track and correlate visitors by capturing electronic impulses transmitted from the devices of visitors to a website on which it is deployed. The process initiated by the ZoomInfo DBSDK identifies visitors through "browser fingerprinting." Fingerprinting allows data brokers like ZoomInfo to ascertain the identity of a website visitor by plotting hundreds of personal identifiers, including a user's geolocation, device information, identification and cross-referencing of malicious cookies installed on their devices, and other traits evident from a user's browser.

## The LinkedIn Insight Tag

29. The Website also deploys the "LinkedIn Insight Tag." Defendant installed and configured the LinkedIn Insight Tag on the Website to enable covert identification, tracking, and profiling of unsuspecting visitors by LinkedIn, all without their knowledge or consent.

30. Upon each visitor's arrival on the Website, the LinkedIn Insight Tag immediately initiates data collection by instructing the visitor's device to transmit personal information relating to the visitor, their device and browser, to LinkedIn. The surveillance occurs instantaneously while the first Website page the visitor encounters is in the process of loading – before the visitor has any meaningful opportunity to review disclosures or provide informed consent to the transmission to LinkedIn.

31. The LinkedIn Insight Tag installed on the Website collects detailed user data including browser type, version, and configuration settings that create unique device signatures. It captures operating system information including architecture

details and version specifications, along with display characteristics such as screen resolution and color depth settings that contribute to device uniqueness.

32.    By deploying the LinkedIn Insight Tag, Defendant actively facilitates the immediate transmission of identifying information from visitors' devices to LinkedIn's servers, including domains such as px.ads.linkedin.com, www.linkedin.com/px/, and snap.licdn.com.

**Plaintiff Was Subjected to Trap and Trace Devices on the Website**

33.    Plaintiff visited the Website on October 19, 2025.  When Plaintiff did so, data about them, their device and their browser was sent to LiveRamp, ZoomInfo, and LinkedIn, by way of electronic impulses.

34.    Defendant transferred Plaintiff's data to ZoomInfo, LiveRamp and LinkedIn was for de-anonymization, profiling, targeting and ongoing browsing tracking (as described *supra*).  The transfer benefitted Defendant, LiveRamp, ZoomInfo and LinkedIn commercial and financially.  These are the central purposes of the deployment of the two DBSDKs and the LinkedIn Insight Tag on Divurgent's Website.

35.    On information and belief, LiveRamp, ZoomInfo, and LinkedIn took Plaintiff's information and added the information to its pre-existing profiles of Plaintiff.  Moreover, on information and belief, in connection its deployment of the ZoomInfo and LiveRamp DBSDKs on the Website, Defendant received information about Plaintiff from LiveRamp and ZoomInfo that it would not have had without the deployment.

36.    The California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 *et seq.*, imposes civil liability and provides for statutory damages for the installation and use of surveillance software that identifies the sources of communications with websites without a court order. *Id.* §§ 637.2, 638.51; *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. 2024) (surveillance software was properly alleged to be a trap and trace device because it communicates over the

internet and the statutory definition of a trap and trace device expressly covers "wire communication" and "electronic communication").

37.    CIPA defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

38.    The LiveRamp and ZoomInfo DBSDKs, and the LinkedIn Insight Tag meet the definition of a "trap and trace device" under Cal. Penal Code § 638.50(c) because they capture signaling information (who the visitor is, and what they are doing) in order to identify the source of an electronic communication.

39.    The LiveRamp and ZoomInfo DBSDKs, and the LinkedIn Insight Tag, are each "reasonably likely" to identify the source of electronic impulses "incoming" to the Website from visitors and their devices.

40.    Defendant did not obtain a court order before installing the LiveRamp DBSDK, the ZoomInfo DBSDK and the LinkedIn Insight Tag.

41.    Defendant did not obtain Plaintiff's express or implied consent to be subjected to data sharing with LiveRamp, ZoomInfo or LinkedIn for the purposes of de-anonymization, fingerprinting, profiling and tracking – nor of any member of the putative Class named herein.

42.    There is no way for Plaintiff (or any member of the putative Class) to learn what LiveRamp, ZoomInfo and Linkedin did with their data, including what inferences LiveRamp, ZoomInfo and Linkedin have gleaned from it, or when, why and to whom the LiveRamp and ZoomInfo have sold or licensed their data. LiveRamp and ZoomInfo do not disclose publicly what they do with the visitor data they receive through the DBSDKs.

43.    Defendant's installation and use of the LiveRamp and ZoomInfo DBSDKs, and the LinkedIn Insight Tag, has caused damage to, and loss of,

Plaintiff's property right – and the property rights of members of the putative Class – to control the dissemination and use of their personal information.

### Serious Ramifications of Non-Consensual Data Sharing

44.    The data collection and manipulation initiated by the LiveRamp and ZoomInfo DBSDKs and the LinkedIn Insight Tag may engender consequences beyond tracking and advertising targeting for commercial purposes.  There are recent examples of tech companies exchanging information with the federal government in ways that threaten harm to viewpoints that challenge the government, women's freedom, and marginalized United States citizens or residents. For example, U.S. Immigration and Customs Enforcement (ICE) has partnered with Palantir Technologies, a Denver-based software company, to use artificial intelligence and data mining to identify, track, and deport suspected noncitizens.[3] Another example of such government data exchange is the provision by Meta, pursuant to valid warrants, of user data such as Facebook messages, for the purpose of investigating and prosecuting state crimes related to abortion.[4]  It was recently reported that Google handed over user data to the United States Department of Homeland Security ("DHS") based on an administrative subpoena for the investigation of an individual based on the fact that he had written to a DHS attorney advocating on behalf of a refugee from Afghanistan in deportation proceedings.[5]  No clear legal authority exists preventing the sale or dissemination of user data by Data Brokers to the federal government.

---

[3] https://www.americanimmigrationcouncil.org/blog/ice-immigrationos-palantir-ai-track-immigrants/ (last visited 2/6/2026).

[4] https://www.nbcnews.com/tech/tech-news/facebook-turned-chat-messages-mother-daughter-now-charged-abortion-rcna42185 (last visited 2/6/2026).

[5] https://newrepublic.com/post/206088/homeland-security-67-year-old-us-citizen-criticized-email (last visited 2/8/2026).

CLASS ACTION COMPLAINT

10

## CLASS ALLEGATIONS

45.    Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

**All persons within California whose identifying information was sent to LiveRamp, ZoomInfo and/or LinkedIn as a result of visiting the Website within the limitations period.**

46.    NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

47.    COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class.  Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

a.   Whether each of the LiveRamp and ZoomInfo DBSDKs, and the LinkedIn Insight Tag, is a trap and trace process as defined by California law;

b.   Whether Plaintiff and Class Members are entitled to statutory damages;

c.   Whether Class Members are entitled to injunctive relief; and

d.   Whether Class Members are entitled to disgorgement of the personal data unlawfully obtained from them through deployment of the LiveRamp and ZoomInfo DBSDKs, and the LinkedIn Insight Tag on the Website.

48.    TYPICALITY: As a person who visited Defendant's Website and whose personal information was transmitted to LiveRamp, ZoomInfo and LinkedIn through the trap and trace devices alleged herein, for the purpose of identifying,

profiling and tracking a visitor, and selling their personal data, Plaintiff is asserting claims that are typical of the Class.

49.    ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained attorneys experienced in class action litigation.  All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

50.    SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of each Class Member would be impracticable and inefficient.  Even if every Class Member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed and address identical issues.

## FIRST CAUSE OF ACTION

### Violations of California Trap and Trace Law

### Cal. Penal Code § 638.51 (the "California Trap and Trace Law")

51.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

52.    The California Trap and Trace Law provides that "a person may not install or use…a trap and trace device without first obtaining a court order…." Cal. Penal Code § 638.51(a).

53.    A "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* § 638.50(c).

54.    Each of the LiveRamp and ZoomInfo DBSDKs, and the LinkedIn Insight Tag, as deployed on the Website, constitutes a trap and trace device under

Cal. Penal Code § 638.50(c). Each of them is designed to identify the source of the electronic and wire communications sent from the devices of persons visiting the Website from locations in California without consent or authorization, in violation of the California Trap and Trace Law.

55. Defendant did not obtain a court order before using or installing the LiveRamp and ZoomInfo DBSDKs, and the LinkedIn Insight Tag, on the Website. Defendant also did not obtain any form of consent from Plaintiff or any of the Class Members before using trap and trace technology, including the LiveRamp and ZoomInfo DBSDKs, and the LinkedIn Insight Tag, to identify visitors to its Website.

56. Defendant is statutorily ineligible to assert consent as a defense to its illegal use of a Trap and Trace device. Under Penal Code § 638.51(b), a consent defense is only available to a "provider of electronic or wire communication service," which Defendant is not.

57. CIPA imposes civil liability including statutory damages for violations of the California Trap and Trace Law. Cal. Penal Code § 637.2.

## PRAYER

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel;

2. An order that data unlawfully obtained by Defendant's deployment of a trap and trace device be disgorged;

3. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

4. Statutory damages pursuant to CIPA;

5. Reasonable attorneys' fees and costs; and

6. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

CLASS ACTION COMPLAINT

13

DATED: February 10, 2026          TAULER SMITH LLP

                                  By:  */s/ J. Evan Shapiro*
                                       J. Evan Shapiro, Esq.

                                  *Attorneys for Plaintiff Carol Price*

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a trial by jury.


DATED: February 10, 2026                    TAULER SMITH LLP


                                            By:    */s/ J. Evan Shapiro*
                                                   J. Evan Shapiro, Esq.

                                            *Attorneys for Plaintiff Carol Price*